**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00497-CHB-CHL**

**VICTOR SWAMINATHAN,**                                                              **Plaintiff,**

v.

**TYLER FITCHIE,**                                                                       **Defendant.**

**MEMORANDUM OPINION**

Before the Court are the Motion for Partial Summary Judgment, Motion of Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint, and Renewed Motion for Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint filed by Plaintiff Victor Swaminathan ("Swaminathan"). (DNs 37, 44, 51.) Defendant Tyler Fitchie ("Fitchie") has not responded to these three motions and his time to do so has expired. *See* Fed. R. Civ. P. 12(a); LR 7.1(c). Therefore, these matters are ripe for review. The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DNs 41, 43.)

For the reasons set forth below, the Court will grant Swaminathan's Motion for Partial Summary Judgment (DN 37); however, the Court will deny Swaminathan's Motion of Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 44)[1] and

---

[1] The Court will deny the "immediate" Motion for Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 44) because this filing is superfluous and redundant as Plaintiff has already filed a Motion for Partial Summary Judgment (DN 37). In addition, the Court admonished Plaintiff that "it is improper to file a motion for immediate entry of partial summary judgment … nearly a month after requesting for partial summary judgment." (DN 53, at PageID # 246.)

Renewed Motion for Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 51).[2]

## I. BACKGROUND

Plaintiff Swaminathan agreed to loan Defendant Fitchie money to allow Fitchie to purchase stock in an entity known as DSI Group, Inc. d/b/a Defense Solutions and/or Defense Solutions International ("DSIG"). (DN 1, at ¶ 5.) To facilitate the loan, between March 31, 2023, and April 3, 2023, Swaminathan and Fitchie executed a series of contracts. Those contracts include a Loan Agreement (DN 1-2), First Amendment to Loan Agreement (DN 1-4), Promissory Note (DN 1-3), and Escrow Agreement (DN 1-6) (collectively the "Loan Documents"). Copies of the Loan Documents signed by Swaminathan, Fitchie, and, where appropriate, their Escrow Agent, Brian Herzig ("Herzig"), have been filed in the record. (DNs 1-2, 1-3, 1-4, 1-6.)

Pursuant to the Loan Documents, Swaminathan agreed to loan Fitchie the sum of $1,500,000 payable in two installments. (DN 1-2, at ¶ 1; DN 1-3, at ¶ 1.) While the amount of the individual installments was modified by amendment, the total amount of the loan remained the same. (DN 1-4.) In return, Fitchie agreed to repay Swaminathan a total of $4,000,000, the loaned amount of $1,500,000, including $2,500,000 to release Swaminathan's interest in the collateral Fitchie offered in exchange for the loan. (DN 1-3, at ¶ 2.) Fitchie agreed to put up stock he owned in TKM Enterprises, LLC d/b/a TKM Underground ("TKM") and the shares he planned to acquire in DSIG as collateral for his repayment of Swaminathan's loan. (DN 1-2, at ¶¶ 2, 4; DN 1-6.) Fitchie caused DSIG to issue a stock pledge authorization stating that Fitchie would own all shares

---

[2] The Court will deny the Renewed Motion for Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 51) because, as the Court stated in another Order, "it is … improper and unnecessary to renew a 'renewed' motion several months [after filing for partial summary judgment;] [t]he only time when renewal of a motion is appropriate is when a motion has been administratively remanded, which did not occur in this case." (DN 53, at PageID #246.)

of DSIG and be free to use them as collateral. (DN 1, at ¶ 8; DN 1-5.) The Parties agreed that Herzig would act as their Escrow Agent to hold that collateral, and Fitchie agreed to deliver share certificates representing his ownership in TKM and DSIG to Herzig to be held until he paid the required amount to Swaminathan. (DN 1-3, at ¶ 3; DN 1-6.) Fitchie was to make the required payment by June 2, 2023. (DN 1-3, at ¶ 2.)

The Loan Documents provided that if Fitchie defaulted on his obligations, the collateral—the stock in TKM and DSIG—was immediately distributable to Swaminathan. (DN 1-3, at ¶¶ 3, 7; DN 1-6, at ¶ A(4).) The Loan Documents further provided that if Fitchie did not make the $4,000,000 payment by June 2, 2023, a "late charge" of 1.5% of the payoff balance owed would be immediately due and payable. (DN 1-3, at ¶ 6.) The Loan Documents also provided that Fitchie remained responsible for "any and all expenses incurred by [ ] [Swaminathan] in connect[ion] with the loan . . . including reasonable attorneys' and paralegals' fees." (*Id.* at ¶ 7.) The Loan Documents permitted Swaminathan to exercise any of the remedies provided for within the documents "singly, successively, or together at [his] sole discretion." (*Id.* at ¶ 9.) The Loan Documents also provided that they would be governed by Kentucky law. (DN 1-2, at ¶ 8; DN 1-3, at ¶ 13.)

Swaminathan performed his obligations under the Loan Documents and loaned the specified sum to Fitchie. (DN 1, at ¶ 11; DN 9-3, at ¶ 3.) But Fitchie neither repaid Swaminathan nor delivered his shares in DISG and TKM to Herzig to serve as collateral. (DN 1, at ¶ 11; DN 9-3, at ¶¶ 5-6.)

On September 20, 2023, Swaminathan filed a four-count Complaint against Fitchie for breach of contract, fraud in the inducement, unjust enrichment, and specific performance. (DN 1.) Service of the Complaint was provided to what was believed to be Fitchie's agent on October 6,

3

2023, via certified mail. (DNs 4, 4-1, 9-1.) Fitchie did not file an answer or otherwise appear and defend against Swaminathan's allegations. At Swaminathan's request, on November 16, 2023, the Clerk entered a default against Fitchie. (DN 8.) On November 17, 2023, Swaminathan filed a motion for default judgment, requesting the Court enter a judgment against Fitchie awarding him (1) $4,000,000 in monetary damages; (2) post-judgment interest; (3) the 1.5% late fee provided for in the Promissory Note; (4) attorney's fees; (5) costs; and (6) a court order compelling specific performance of Defendant to transfer his shares in TKM and DSIG to the Escrow Agent for release to Swaminathan. (DN 9.)

Thereafter, Fitchie contacted the Court by telephone and spoke with the Case Manager for District Judge Claria Horn Boom. (DN 10.) Fitchie "advised that he was aware of the lawsuit and would speak with [Swaminathan]." (*Id.*) Despite that call, Fitchie did not immediately file anything or otherwise appear in this action. While Fitchie briefly contacted counsel for Swaminathan to discuss resolving this lawsuit (DN 11), Swaminathan's counsel represented on March 30, 2024, that he had received no further communications from Fitchie regarding this lawsuit. (DN 15.) Additionally, the Court also sent a copy of its April 5, 2024, Order requiring Swaminathan to supplement his motion for default judgment to Fitchie via certified mail and received a return receipt card back that was signed by the same person who signed when Fitchie was served with the Complaint via certified mail. (DNs 4-1, 16, 18.) The Court's first order for supplementation indicated that Swaminathan's motion for default judgment would be addressed in due course after submission of the supplementary materials, putting Fitchie on notice that the Court would address the motion and that a default judgment was a possible outcome. (DN 16.) At this time, Fitchie had neither appeared nor caused any attorney to enter an appearance on his behalf in this action.

4

Judge Boom referred this matter to (DN 13) who subsequently entered a report recommending the Court grant Swaminathan's default judgment (DN 21). Following this recommendation, Fitchie filed a timely objection to the report, claiming to never have received service either personally or through his agent. (DN 24, at PageID # 116-17.) Fitchie also filed motions to set aside the summary judgment recommendation (DN 26) and to file an answer out of time (DN 27). In response to Fitchie's claim of deficient service, the Court rejected the report's recommendation, ordered Swaminathan's motion for default judgment be denied, and Fitchie's motions to set aside the default judgment and request to file an out of time answer be granted. (DN 31.) Fitchie subsequently filed his Answer on October 30, 2024. (DN 32.)

On October 31, 2024, the Court ordered the undersigned to conduct a Rule 16 case management conference on December 17, 2024, and pursuant to Rule 26(f), that the parties meet and develop a joint discovery plan. (DN 33.) This case management conference was remanded due to counsel's failure to comply with the Court's previous order. (DN 34.) Defendant's counsel soon after filed a Joint Discovery Plan on December 20, 2024. (DN 35.) In it, the parties acknowledged that Swaminathan had served Fitchie their first discovery requests on November 4, 2024, and was still awaiting a response. (*Id*. at PageID # 160.)

On January 8, 2025, Swaminathan filed the present Motion for Partial Summary Judgment. (DN 37.) Swaminathan asserted Fitchie's failure to respond to discovery requests in the allotted time amounted to an admission under Fed. R. Civ. P 36(a)(3). (*Id*. at PageID # 166.) Specifically, Requests for Admission 1, 2, 3, and 5 requested that Fitchie admit his execution of the loan documents, Request 6 requested that he admit his receipt of the loan funds, Request 7 requested he admit that he has not paid the amounts due under either the Loan Agreement or the Note, and Request 8 requested that he admit he has failed to deliver shares of TKM or DSIG to the Parties'

escrow agent. (*Id.*; DN 37-1, at PageID # 176-77.) Based on this factual background, Swaminathan asserted he was entitled to partial summary judgment on his claims for breach of contract, unjust enrichment, and specific performance under the agreement, and demanded the Court grant him $5,138,000, possession of all Fitche's stock shares of TKM and DSIG, and attorney fees of $6,597 and court costs of $402. (*Id.* at PageID # 165-68.)

Ritchie's response, if any, to Swaminathan's Motion for Summary Judgment (DN 37) would have been due on January 29, 2025,[3] but Fitchie filed no response. On January 30, 2025, the Court specifically ordered Fitchie to respond to Swaminathan's Motion for Partial Summary Judgment (DN 40), but he failed to do so, and the time to do so has expired. Swaminathan then filed his Motion for Immediate Entry of Summary Judgment on Counts I, III, and IV of Plaintiff's Complaint, reiterating the requests made in his prior motion for summary judgment. (DN 44.)[4] After both parties submitted their consent to jurisdiction (DN 41, 43), the Court referred this case to the undersigned to conduct all proceedings and order entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (DN 45). Swaminathan then filed his Renewed Motion for Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint. (DN 51.)[5]

## II.  DISCUSSION

### A. Legal Standard

In ruling on a motion for partial summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving

---

[3] Swaminathan filed his Motion for Summary Judgment (DN 37) on January 8, 2025, so pursuant to Local Rule 7.1(c), Fitchie had to file a response within 21 days. *See* LR 7.1(c).

[4] In addition, Fitchie did not respond within 21 days to the Motion of Immediate Entry of Summary Judgment (DN 44)

[5] Also, Fitchie did not respond within 21 days to the Renewed Motion for Immediate Entry of Summary Judgment (DN 51).

6

party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies the burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B). "The mere existence of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### B. Analysis

In the present case, the Court finds that Swaminathan has met his burden of proving Counts I, III and IV by demonstrating the existence of a valid contract between himself and Fitchie, Fitchie's breach of that contract, and the financial benefit retained by Fitchie at Swaminathan's loss. (*See* DNs 1-2, 1-3, 1-4, and 1-6 (Parties Agreements); *see also* DN 37-1 (Plaintiff's First Request for Admissions).) Swaminathan provided into evidence the original Loan Agreement (DN 1-2), the Promissory Note (DN 1-3), the First Amendment to Loan Agreement (DN 1-4), and the Escrow Agreement (DN 1-6), which collectively demonstrate the existence of a valid contract

7

between the parties. In his Answer, Fitchie admitted to executing the Promissory Note, entering into the First Amendment to the Loan Agreement, and after receiving the $1,500,000 loan from Swaminathan, that he failed and refused to turn over his required Shares to the Escrow Account or to repay Swaminathan the sum of his loan. (DN 32, at PageID # 152.)

Additionally, Fitchie's failure to respond to Swaminathan's Requests for Admission further supports these findings. Fitchie was electronically served with his discovery request on November 4, 2024. (DN 37-1, at PageID # 170.) Fitchie filed a Joint Discovery Plan with the Court on December 20, 2024, in which both parties acknowledge, "Plaintiff served his first set of discovery requests on Defendant on November 4, 2024 and []await[s] receipt of Defendant's overdue responses." (DN 35, at PageID # 160.) Under Fed. R. Civ. P. 36(a)(3), Fitchie's failure to respond to Swaminathan's Requests for Admission amounts to admitting the following facts in controversy: that he executed the various agreements, received Swaminathan's initial loan, has not provided Swaminathan any funds or Shares as required under the agreements, and that no facts exist to provide a legal justification for his refusal to pay Swaminathan. (DN 37-1.) Evaluating the totality of Swaminathan's evidence, this Court finds that he has satisfied his initial burden of demonstrating the absence of a genuine issue of material fact that would preclude an entry of judgment in his favor in accordance with Fed. R. Civ. P. 56(a).

With Swaminathan's burden met, the Court must now evaluate in the light most favorable to Fitchie, if he has presented any specific evidence that would prove the existence of a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 247-48. The Court finds that Fitchie has failed to meet his burden. As previously mentioned, Fitchie's silence in the face of Swaminathan's Requests for Admission amounts to an admission of the underlying facts. (DN 37-1.) He has failed to comply with the Court's Order to respond to Swaminathan's Motion for Partial Summary

Judgment (DN 40), provide any additional evidence contradicting or justifying his alleged actions, or otherwise mount any identifiable defense.

Based on this absence of evidentiary or factual support for why Swaminathan's partial summary judgment should not be granted, the Court finds Fitchie has failed to meet his burden and that Swaminathan is entitled to summary judgment.  Strictly speaking though, Swaminathan moved for partial summary judgment on Counts I, III, and IV, leaving Count II, a claim for fraud in the inducement.  That said, "[t]here is no per se prohibition on entering summary judgment[] *sua sponte*." *Emp'rs. Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). District courts "'are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party *was on notice that [he] had to come forward with all of [his] evidence*.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 326) (emphasis added in original).  The "totality of the circumstances" must be considered, in particular, "whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants."  *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (citation omitted).  Here, the totality of the circumstances permits a grant of summary judgment *sua sponte* as to Count II because Fitchie's silence in the face of Swaminathan's Requests for Admission amounts to an admission of the underlying facts, so there exists no genuine dispute of material fact for which this case should proceed to trial.  Another factor that weighs in favor of granting summary judgment *sua sponte* as to Count II includes that Swaminathan moved for partial summary judgment as to Counts I, III, and IV.  In addition, Fitchie was on notice that he had to come forward with all of his evidence when the Court ordered him to respond to the Motion for Partial Summary Judgment (DN 40), but he failed to do so.  Accordingly,

the Court will grant summary judgment *sua sponte* as to Count II and enter a final judgment in this matter.

At this juncture after having reviewed Swaminathan's submissions, the Court will consider each of his requested categories of damages below.

### C. Damages

#### 1. Monetary Damages

Through the terms of the Loan Documents Swaminathan submitted, his affidavit, and the unanswered discovery requests, Swaminathan has demonstrated 1) that he fully performed his obligations under the Loan Documents, 2) that Fitchie subsequently failed to pay the agreed upon sum of $4,000,000 ("Payoff Amount", consisting of the $1,500,000 Principal Loan Balance and $2,500,000 Release Payment), and 3) that he is contractually entitled to the full Payoff Amount. Thus, the Court will award Swaminathan $4,000,000 in monetary damages.

#### 2. Late Fee

Through the terms of the Loan Documents Swaminathan submitted, his affidavit, and the unanswered discovery requests, Swaminathan has demonstrated that Fitchie did not make any payoff on or before June 2, 2023, as required. Thus, provisions in paragraphs 6 and 7 of the Promissory Note requiring the payment of a 1.5% late fee per month were triggered. (DN 1-3, at PageID # 12.) Therefore, the Court will award Swaminathan $1,138,000 in late fees [insert] 1.5% of the $4,000,000 balance that was unpaid one the June 2, 2023, maturity date under the Loan Documents.

#### 3. Attorney's Fees

In the instant motion, Swaminathan requests that the Court award him $6,597 in attorney's fees. (DN 37, at PageID # 168.) In support of this request, Swaminathan's attorney has submitted

an Affidavit along with all relevant invoices. (DN 37.3, at PageID # 189-214.) Based on the billing records submitted, Swaminathan seeks compensation for a total of $6,597 in legal fees, broken down as follows by timekeeper:

|  | Hours | Hourly Rate | Total |
|---|---|---|---|
| Lori Libich | 0.5 | $125.00/hr | $62.50 |
| Lori Libich | 0.7 | $135.00/hr | $94.50 |
| Michael McClain | 18.4 | $350.00/hr | $6,440.00 |
|  |  | TOTAL | $6,597.00 |

(*Id.*) The plain language of the Loan Documents does entitle Swaminathan to attorney's fees. (DN 1-3, at ¶ 7.)

Where recoverable, attorneys' fees are calculated using the "lodestar" method, which is determined by multiplying the number of hours reasonably expended on this litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar calculation can be adjusted by consideration of a number of factors. *Hensley*, 461 U.S. at 430 n.3. These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases.

*Murphy v. Vaive Wood Prod. Co.*, 802 F. App'x 930, 935-36 (6th Cir. 2020) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

As to the reasonableness of the rates charged, in his affidavit, Swaminathan's attorney, Michael McClain, represented that the requested rates were reasonable based on "his familiar[ity]

11

with the attorneys' fees awarded in cases which involve issues similar to those present in this case" and based on "the time, labor and skill required to perform the legal services properly, the amounts involved and the results obtained, the nature and length of the Firm's professional relationship with [ ] Swaminathan, and the experience, reputation, and ability of the lawyers performing [the] services."  (DN 37-3, at PageID # 191.)  While this is some evidence regarding the reasonableness of the requested fee, the Court does not have specific information as to either McClain's or Libich's experience.  Nevertheless, the Court may take judicial notice of McClain's 22 years of experience based on his first admission to practice in Kentucky in October 2002. Michael W. McClain II, Ky. Bar Ass'n (July 16, 2025, 9:10 AM), https://www.kybar.org/members/?id=32545755.[6] *E.g.*, *M&T Cap. v. Northpoint Transp., Inc.*, No. 2:23-cv-00656-JAM-CKD, 2024 U.S. Dist. LEXIS 75816, at *6 (E.D. Cal. Apr. 25, 2024) (stating that "the court takes judicial notice of the California state bar website indicating that [attorney] was admitted to the bar in January 2004, and thus has twenty years of experience."); *Morales v. Kavulich & Assocs., P.C.*, 16-CV-2134 (ALC) (JLC), 2017 U.S. Dist. LEXIS 94938, at *3-4 (S.D.N.Y. June 15, 2017) (taking judicial notice of attorneys' admission years based on New York State Unified Court System records); *Hariri v. Portland State Univ.*, 3:15-CV-1076-PK, 2017 U.S. Dist. LEXIS 103482, at *9 (D. Or. July 5, 2017) (taking judicial notice that two attorneys have been listed as Oregon State Bar members since 2015 and 2007).

The Court now examines cases addressing years of experience and attorney rates within the Western District of Kentucky.  In one case in 2017, an attorney who practiced law for 30 years

---

[6] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Here, the Court may take judicial notice of McClain's 22 years of experience as an attorney because this information can be accurately and readily determined from his admissions date on the Kentucky Bar Association website.

stated that his hourly rate "ha[d] been $395 for more than a year and for two years prior to that his rate was $375 per hour," however, he charged a rate of $340 per hour for this action. *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 1520432, at *7-8 (W.D. Ky. Apr. 25, 2017). The court found that an attorney rate of $340 an hour was reasonable. *Pogue v. Nw. Mut. Life Ins. Co.*, 2017 WL 1520432, at *3-5. Here, although the attorney with 30 years of experience charged a usual rate of $395 per hour, the court found that the rate of $340 per hour for this action was reasonable.

In another case in 2019, the court found that the hourly rate of $350 for attorneys Robert A. Winter, Jr. and Thomas B. Bruns was reasonable in light of evidence regarding, among others, their years of experience. *Brooksbank v. Koch*, No. 3:16CV-00668-JHM, 2019 WL 7407401, at *1, 9 (W.D. Ky. Apr. 15, 2019). Although the court did not mention the details regarding the years of experience of attorney Winter and Bruns, this Court may take judicial notice of Winter's 34[7] and Bruns's 25[8] years of experience based on their first admission to practice in Kentucky. Robert A. Winter, Jr., Ky. Bar Ass'n (July 16, 2025, 3:32 PM), https://www.kybar.org/members/?id=32537503; Thomas B. Bruns, Ky. Bar Ass'n (July 16, 2025, 3:33 PM), https://www.kybar.org/members/?id=32541396&hhSearchTerms=%22Thomas+and+B+and+Bruns%22.

In a case in 2020, the court found that a rate of $350 to be a reasonable rate. *Scheffler v. Lee*, No. 3:14-cv-373-CRS, 2020 WL 2174449, at *7 (W.D. Ky. May 5, 2020) (finding $350 per hour to be a reasonable rate). In doing so, the court referenced affidavits from 11 Louisville

---

[7] The court calculates these years of practice based on Winter's admissions date of May 21, 1984 and the filing of the *Brooksbank v. Koch* decision on April 15, 2019.
[8] The court calculates these years of practice based on Bruns's admissions date of October 22, 1993 and the filing of the filing of *Brooksbank v. Koch* decision on April 15, 2019.

attorneys who stated that their hourly rate ranged between $325 and $375 per hour. *Scheffler v. Lee*, 2020 WL 2174449, at 6.[9]

These cases referencing the reasonableness of hourly rates and years of experience were decided between 2017 to 2020, and although the one decision referenced that a $350 hourly rate for 25 years of experience was reasonable, the Court finds that today in 2025 McClain's requested hourly rate of $350 with 22 years of experience is reasonable.

As to the requested rate for Libich, who the Court presumes is a paralegal based on her hourly rate, $125.00 per hour and $130.00 per hour are consistent with what courts within this district have previously awarded for paralegal work. *See Pogue*, 2017 WL 1520432, at *11-12 (finding $190.00 per hour was reasonable for extraordinarily experienced paralegal); *Bailey v. United Recovery Sols., Inc.*, No. 3:17-CV-00350-DJH-RSE, 2018 WL 6332849, at *3 (W.D. Ky. Oct. 23, 2018), *report and recommendation adopted*, 2018 WL 6330413 (W.D. Ky. Dec. 4, 2018) (finding $125.00 per hour was reasonable for paralegal where Court had no information as to the paralegal's experience). Thus, the Court finds that the requested rates of $125.00 and $135.00 per hour for paralegal work are reasonable.

As to the number of hours expended, the Court having reviewed the descriptions of the items billed, finds the number of hours expended reasonable given the tasks completed to date in this litigation. The descriptions of the tasks performed in the bills are sufficiently detailed to allow the Court to conclude that the entries did not include "'excessive, redundant, or otherwise unnecessary' hours" requiring reduction by the Court. *Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x

---

[9] This decision does not specifically name the 11 Louisville attorneys referenced in the affidavits, so the Court cannot gauge their years of experience and reasonableness of their hourly rate. Even if the Court wanted to glean these names from the affidavits and determine whether their hourly rates are reasonable considering their years of experience, other courts have determined that this constitutes an improper means of taking judicial notice. *E.g.*, *Fed. Deposit Ins. Corp. v. O'Flahaven*, 857 F.Supp. 154, 157 (D. N.H. 1994) (citations omitted) (stating that "[t]he [c]ourt could not judicially notice the veracity of the allegations in the affidavits; it could only take notice that the affidavits were in fact filed and that the factual averments were in fact made.")

639, 649 (6th Cir. 2021) (quoting *Hensley*, 461 U.S. at 434). The number of hours of work performed was also sufficiently limited given the few tasks undertaken to date in this case.

Accordingly, the Court will award Swaminathan the total amount of fees billed in this matter in the amount of $6,597.

### 4. Court Costs

Swaminathan also seeks his litigation costs in the amount of the $402 filing fee for this action. (DN 37, at PageID # 168; DN 37-3, at PageID # 193.) As the prevailing party, Swaminathan is entitled to costs. Fed. R. Civ. P. 54(d). Thus, the Court will award him $402 in costs.

### 5. Post-Judgment Interest

The award of post-judgment interest in diversity cases is governed by federal law. *E.g.*, *Est. of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir. 2000)) ("In diversity cases in this Circuit, federal law controls postjudgment interest but state law governs awards of prejudgment interest."). Pursuant to 28 U.S.C. § 1961, interest on a money judgment "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. Therefore, the Court will order that Swaminathan be awarded post-judgment interest at the rate prescribed by 28 U.S.C. § 1961 on the date this judgment is entered, accruing from that date until the judgment is entered in full.

### 6. Specific Performance

Finally, Swaminathan has requested that the Court order Fitchie to "transfer all shares referenced in the Complaint to the Escrow Agent" for Swaminathan to be able to take "immediate

possession" of those shares. (DN 37, at PageID # 168.) The Court previously directed Swaminathan to submit a supplemental brief regarding the propriety of this category of requested relief to clarify how Kentucky law entitles Swaminathan to both monetary damages and specific performance or in this case both payment for the collateral and the transfer of the collateral itself. (DN 19.) "In Kentucky, the general 'measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Ford Contracting, Inc. v. Ky. Trans. Cab.*, 429 S.W.3d 397, 407 (Ky. App. 2014) (quoting *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995)). Had the Parties' contract been performed here, Swaminathan would have received his monetary payment and Herzig would have released the TKM and DSIG stock Fitchie put up as collateral back to Fitchie. Thus, Swaminathan is entitled to both money damages and collateral.

In his supplemental brief, Swaminathan analogized the instant situation to one where a borrower defaults and a creditor files a foreclosure action, obtaining a money judgment against the borrower. (DN 20.) Swaminathan contended that in that situation, the creditor would not be entitled to more than one satisfaction of a judgment and that any money from the foreclosure sale would be applied to the money judgment and any surplus returned to the borrower. (*Id.*) Swaminathan represented that he understands he is entitled to only one satisfaction but emphasized that he is entitled to bundle his remedies in one Complaint as he did in this case. (*Id.*) As authority, he cited to a provision in UCC Article IX set forth in KRS § 355.9-601.

KRS § 355.9-601 provides multiple remedies for a secured party in the event of a debtor's default. "A secured party . . . [m]ay reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." KRS § 355.9-601(1)(a). And, "[a] secured party in possession of collateral or control of collateral . . . has the

16

rights and duties provided in KRS 355.9-207," which include the right to dispose of the collateral and hold the proceeds or apply the proceeds to the outstanding debt. KRS § 355.9-601(2); KRS § 355-9.207(3). KRS § 355.9-601(3) specifically states that a secured party's "rights under subsections (1) and (2) of this section are cumulative and may be exercised simultaneously." KRS § 355.9-601(3). "As a result, a secured party may bring a judicial action for the amount due under a loan and take possession of the collateral once the debtor has defaulted." *Callidus Cap. Corp. v. Smith*, No. 5:15-cv-365-DCR, 2016 WL 4699700, at *23 (E.D. Ky. Sept. 7, 2016).

Like the UCC provision cited, the Loan Documents also permitted Swaminathan to exercise any of the remedies provided for within the documents "singly, successively, or together at [his] sole discretion." (DN 1-3, at ¶ 9.) The Loan Documents both required Fitchie to deliver his TKM and DSIG stock to Herzig as collateral and authorized Herzig to distribute that stock to Swaminathan in the event of Fitchie's default. (*Id.* at ¶¶ 3, 7; DN 1-6.) The only thing preventing Swaminathan from fully exercising the Parties' agreed and bargained-for remedies is the fact that Fitchie did not deliver the collateral to Herzig as he agreed to do under the terms of the Parties' Loan Documents. Thus, the Court finds Swaminathan has demonstrated he is entitled to specific performance of the provision in the Loan Documents requiring Fitchie to transfer his stock in TKM and DSIG to the escrow agent, who will thereafter release all the shares to Swaminathan, and Orders that relief be Granted as set forth below.

17

### III. CONCLUSION

The Court will grant Plaintiff Victor Swaminathan's Motion for Partial Summary Judgment. (DN 37). The Court will *sua sponte* grant summary judgment as to Count II, fraud in the inducement. The Court will deny Plaintiff Victor Swaminathan's Motion of Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 44) and Renewed Motion for Immediate Entry of Summary Judgment on Counts I, III and IV of Plaintiff's Complaint (DN 51).

The Court will award Plaintiff Victor Swaminathan $5,138,000 in monetary damages and late fees. In addition, the Court will award post-judgment interest at the rate prescribed by 28 U.S.C. § 1961 on the date this judgment is entered, accruing from that date until the judgment is entered in full.

The Court will order Defendant Tyler Fitchie to pay Plaintiff Victor Swaminathan $6,597 in attorney's fees and $402 in court costs.

The Court will also order Defendant Tyler Fitchie to transfer all his shares in as DSI Group, Inc. d/b/a Defense Solutions and/or Defense Solutions International and TKM Enterprises, LLC d/b/a TKM Underground to Escrow Agent Brian Herzig, who the Court will order to thereafter to release all the shares to Plaintiff Victor Swaminathan.

An order will be entered in accordance with this Memorandum Opinion.

cc: Counsel of record, Defendant Tyler Fitchie (via certified mail)

July 22, 2025

Colin H Lindsay, Magistrate Judge
United States District Court